UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ZAMBOROSKI,

    Plaintiff,

v.                                              Case No. 04-73194

RON KARR, DAVID BENAC,
BRUCE BALLE, and BRUCE ARNOLD,       HONORABLE AVERN COHN

    Defendants.

_____/

**MEMORANDUM AND ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION
AND
DENYING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
AND
DIRECTING THE APPOINTMENT OF COUNSEL FOR PLAINTIFF**

I.  Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff David Zamboroski is proceeding <u>pro se</u>.  He claims that his First, Eighth, and Fourteenth Amendment rights were violated during his pre-trial detention at the Montmorency County Jail.  Defendants, their respective positions, and the capacity in which they are being sued are as follows:

| <u>Defendant</u> | <u>Title</u> | <u>Capacity</u> |
|---|---|---|
| Ron Karr | Montmorency County Sheriff | Individual and official capacity |
| David Benac | Undersheriff | Individual capacity |
| Bruce Balle | Sergeant | Individual capacity |

| | | |
|---|---|---|
| Bruce Arnold | Deputy Sheriff | Individual capacity |

The case was referred to a magistrate judge for pre-trial proceedings. The defendants filed a motion to dismiss or for summary judgment. On August 12, 2005, the magistrate judge issued a report and recommendation (MJRR) recommending that the motion be granted in part and denied in part. Specifically, the magistrate judge recommends that defendants' motion be granted on plaintiff's First Amendment Claim and denied as to his Eighth and Fourteenth Amendment Claims.

Before the Court are all parties' objections to the MJRR.[1] For the reasons that follow, defendants' motion will denied. The Court will appoint counsel for plaintiff to pursue his claims under the First, Eighth, and Fourteenth Amendments relating to (1) his right to worship, (2) the use of restraints, (3) denial of out-of-cell exercise, and (4) access to showers (hygiene).

## II. Background

Plaintiff was arrested on May 23, 1999 and taken into custody.[2] After his arrest, and while being transported to the Montmorency County Jail, plaintiff assaulted the transporting officers in an apparent attempt to escape. Plaintiff, however, says that the officers also assaulted him. Immediately upon arrival at the jail, plaintiff was placed in restraints (leg and belly chains) and placed in a holding cell. Plaintiff was housed in the

---

[1]The magistrate judge also recommended a finding that plaintiff had exhausted his administrative remedies. Defendants do not object to this finding. Thus, the Court adopts the MJRR's findings and conclusions with respect to the exhaustion issue.

[2]Plaintiff was charged and convicted of murdering Susan Lindbloom, a confidential police informant, by poisoning her. Lindbloom was apparently going to testify against Plaintiff on drug charges. He was sentenced to life imprisonment.

Montmorency County Jail from May 23, 1999 until his sentencing on February 23, 2000. This amounts to 234 days as a pre-trial detainee and 42 days as a convicted felon, for a total of 276 days. It is undisputed that plaintiff was placed in restraints continuously during the entire 276 days.

During his incarceration, plaintiff on several occasions displayed behavior which defendants say indicated he was a security risk. Specifically, a few weeks after his arrest, on June 12, 1999, plaintiff inquired about the location of a co-defendant who had apparently agreed to testify against him. Two months later, on August 17, 1999, a trustee informed the jail staff that plaintiff was asking questions about the location of security cameras in the garage and in the courthouse. On or about August 27, 1999, plaintiff was seen trying to choke himself. Later that night, plaintiff was seen with a string around his neck. Following the incident, plaintiff struck his head against the wall, causing the jail to place a styrofoam helmet on his head. Plaintiff was also referred for a mental health examination. About four months after his incarceration, on September 8, 1999, a mental health professional recommended "counseling: possible suicide risk - may act out." On or about September 14, 1999, defendant Ball discovered a string connected to a "metal object" hidden in plaintiff's cell, leading them to believe that plaintiff either intended to commit suicide or overpower a guard. The record does not contain any evidence of similar or other disruptive behaviors by plaintiff after mid-September 1999. Again, however, plaintiff was still placed in restraints for another five months.

During his 276 days of incarceration at the Montmorency County Jail, plaintiff received a total of 42 showers. In eleven instances, plaintiff went without a shower for

3

over seven days.  Plaintiff also received only 2 out-of-cell exercise periods.  Plaintiff was also not permitted to attend group worship sessions, but was provided a bible and allowed regular contact with a clergyman.

Plaintiff has a criminal history.  According to the pre-sentence report, he has prior convictions for possession of marijuana, larceny, armed robbery, felony firearm, and assault with a dangerous weapon

Defendants claim that the use of restraints and other measures was justified for prison security reasons based on plaintiff's violent criminal history, his initial attempt at escape, the crime for which he was convicted, as well as the discovery of a string and metal object in his cell in September 1999.

### III.  Analysis

#### A.

The Court reviews a MJRR de novo when objections are made.  See Fed. R. Civ. P. 72(b).  The Court may "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."  Id.

#### B.

Plaintiff objects only to the magistrate judge's recommendation that his First Amendment claim be dismissed.  The magistrate judge concluded that allowing plaintiff use of a bible and providing regular access to a clergyman defendants "appear to have balanced Plaintiff's First Amendment rights against their 'significant interest' in maintaining a secure prison environment."  MJRR at p. 22.  Plaintiff says that defendants could have allowed him to attend group worship sessions without affecting security as plaintiff would have been in restraints.  Defendants have maintained that the

4

restrictions were reasonable and balanced plaintiff's rights while maintaining a secure prison environment, thereby adequately affording plaintiff his First Amendment rights.

The Court, however, finds that whether defendants' actions were reasonable presents a genuine issue of material fact. While plaintiff initially asked about the whereabouts of a co-defendant who was going to testify against him, thus indicating contact with other prisoners might undermine security, the record contains only one such inquiry which occurred shortly after his detention. Whether or not plaintiff's inquiry, as well as his other behaviors which essentially ceased as of September 1999, justified defendants decision to prevent plaintiff from attending group worship is for a trier a fact. So too is the question of whether allowing plaintiff a bible and access to a clergyman was sufficient to accommodate his First Amendment rights. Thus, the Court rejects the magistrate judge's contrary conclusion and finds that the record contains enough evidence to survive summary judgment.

Defendants object to the magistrate judge's conclusion that based on the record plaintiff's claims under the Eight and Fourteenth Amendments survive summary judgment, that defendants are not entitled to qualified immunity, and that plaintiff has stated a claim for violation of an official policy or custom. Defendants' objections are long on the law but short on establishing that there is no genuine issue of material fact as to whether the extreme circumstances under which plaintiff was housed and the markedly limited access to showers and out-of-cell exercise violated plaintiff's constitutional rights. This is especially true in light of defendants' questionable justifications for the extreme conditions when the record shows plaintiff exhibited no problems after September 1999. As carefully and fully explained in the MJRR, there are

5

genuine issues of material fact as to whether defendants' actions in keeping plaintiff continuously in restraints for 276 days and allowing him only 42 showers and 2 out-of-cell periods for exercise during those 276 days violated plaintiff's constitutional rights. Defendants are not, based on the record, entitled to qualified immunity. Plaintiff has also sufficiently stated a claim for an official capacity claim against Karr and established a genuine issue of material fact sufficient to survive summary judgment.

C.

Plaintiff is currently pro se. Given that the plaintiff's claims have survived summary judgment, the Court directs that counsel be appointed for plaintiff.

SO ORDERED.


Dated: August 24, 2005

                s/Avern Cohn  
                AVERN COHN  
         UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, August 24, 2005, by electronic and/or ordinary mail.

                s/Julie Owens  
                Case Manager, (313) 234-5160