UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID ZAMBOROSKI,

      Plaintiff,

v.                                                                    Case No. 04-73194

RON KARR, DAVID BENAC,                                 HONORABLE AVERN COHN
BRUCE BALLE, and BRUCE ARNOLD

      Defendants.
_____/

**MEMORANDUM AND ORDER**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND**
**GRANTING PLAINTIFF'S MOTION FOR ENTRY ON LAND BY EXPERT**

I.  Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff David

Zamboroski claims that his First, Eighth, and Fourteenth Amendment rights were

violated during his pre-trial detention at the Montmorency County Jail.  Defendants, their

respective positions, and the capacity in which they are being sued are as follows:

| Defendant | Title | Capacity |
|---|---|---|
| Ron Karr | Montmorency County Sheriff | Individual and official capacity |
| David Benac | Undersheriff | Individual capacity |
| Bruce Balle | Sergeant | Individual capacity |
| Bruce Arnold | Deputy Sheriff | Individual capacity |

As will be explained, the case was referred to a magistrate judge for pre-trial

proceedings.  The defendants filed a motion to dismiss or for summary judgment.  On

August 12, 2005, the magistrate judge issued a report and recommendation (MJRR)

recommending that the motion be granted in part and denied in part.  Specifically, the

magistrate judge recommended that defendants' motion be granted on plaintiff's First

Amendment Claim and denied as to his Eighth and Fourteenth Amendment Claims.

The Court granted in part and rejected in part the MJRR, concluding that plaintiff

could pursue his claims under the First, Eighth, and Fourteenth Amendments relating to

(1) his right to worship,[1] (2) the use of restraints, (3) denial of out-of-cell exercise, and

(4) access to showers (hygiene).  The Court also appointed counsel for plaintiff.  See

Memorandum and Order filed August 24, 2005.

Before the Court are the following motions:

Defendants' Motion for Summary Judgment Pursuant to the Prison Litigation
Reform Act

Plaintiff's Motion for Entry on Land by Expert

For the reasons that follow, defendants' motion is DENIED and plaintiff's motion

is GRANTED.

## II.  Background[2]

Plaintiff was arrested on May 23, 1999 and taken into custody.[3]  After his arrest,

and while being transported to the Montmorency County Jail, plaintiff assaulted the

transporting officers in an apparent attempt to escape.  Plaintiff, however, says that the

---

[1]The parties later stipulated to dismiss plaintiff's religious claim.

[2]This is taken from the Court's August 24, 2005 Order.

[3]Plaintiff was charged and convicted of murdering Susan Lindbloom, a confidential police informant, by poisoning her.  Lindbloom was apparently going to testify against Plaintiff on drug charges.  He was sentenced to life imprisonment.

officers also assaulted him.  Immediately upon arrival at the jail, plaintiff was placed in restraints (leg and belly chains) and placed in a holding cell.  Plaintiff was housed in the Montmorency County Jail from May 23, 1999 until his sentencing on February 23, 2000.  This amounts to 234 days as a pre-trial detainee and 42 days as a convicted felon, for a total of 276 days.  It is undisputed that plaintiff was placed in restraints continuously during the entire 276 days.

During his incarceration, plaintiff on several occasions displayed behavior which defendants say indicated he was a security risk.  Specifically, a few weeks after his arrest, on June 12, 1999, plaintiff inquired about the location of a co-defendant who had apparently agreed to testify against him.  Two months later, on August 17, 1999, a trustee informed the jail staff that plaintiff was asking questions about the location of security cameras in the garage and in the courthouse.  On or about August 27, 1999, plaintiff was seen trying to choke himself.  Later that night, plaintiff was seen with a string around his neck.  Following the incident, plaintiff struck his head against the wall, causing the jail to place a styrofoam helmet on his head.  Plaintiff was also referred for a mental health examination.  About four months after his incarceration, on September 8, 1999, a mental health professional recommended "counseling: possible suicide risk - may act out."  On or about September 14, 1999, defendant Ball discovered a string connected to a "metal object" hidden in plaintiff's cell, leading them to believe that plaintiff either intended to commit suicide or overpower a guard.  The record does not contain any evidence of similar or other disruptive behaviors by plaintiff after mid-September 1999.  Again, however, plaintiff was still placed in restraints for another five months.

During his 276 days of incarceration at the Montmorency County Jail, plaintiff received a total of 42 showers.  In eleven instances, plaintiff went without a shower for over seven days.  Plaintiff also received only 2 out-of-cell exercise periods.  Plaintiff was also not permitted to attend group worship sessions, but was provided a bible and allowed regular contact with a clergyman.

Plaintiff has a criminal history.  According to the pre-sentence report, he has prior convictions for possession of marijuana, larceny, armed robbery, felony firearm, and assault with a dangerous weapon

Defendants claim that the use of restraints and other measures was justified for prison security reasons based on plaintiff's violent criminal history, his initial attempt at escape, the crime for which he was convicted, as well as the discovery of a string and metal object in his cell in September 1999.

### III.  Defendants' Motion for Summary Judgment

### A.  Parties' Arguments

Defendants argue that summary judgment is appropriate for two reasons.  First, defendants argue that because plaintiff did not file a grievance while he was an inmate at the Montmorency County Jail as required by jail policy, citing Woodford v. Ngo, __ U.S. __, 126 S.Ct. 2378 (2006).  Second, defendants argue plaintiff's injuries are de minimus and therefore his claim for emotional or mental damages is barred.

Plaintiff contends that the exhaustion issue has already been decided and defendants have no right to raise it again.  Moreover, plaintiff argues that the Supreme Court's decision in Ngo does not change this result.  Plaintiff also says he complied with the grievance policy and to the extent that defendants maintain that the grievance policy

limits the filing of grievances to only those inmates housed at the county jail, he is no

required to exhaust since he no longer is an inmate at the jail.  Plaintiff also contends

that his injuries are not de minimus.

B.  Exhaustion

1.

In order to understand the exhaustion issue, a brief background recitation is in

order.

In 2002, plaintiff filed suit against defendants.  The matter was referred to a

magistrate judge, before whom defendants filed two motions for summary judgment.

On May 29, 2003, the magistrate judge issued a MJRR recommending that the

complaint be dismissed for failure to exhaust administrative remedies because plaintiff

failed to prove exhaustion.  The district court adopted the MJRR and dismissed the case

without prejudice.  Plaintiff appealed.  The Court of Appeals for the Sixth Circuit

affirmed.  Zamboroski v. Karr, No. 03-1965 (6th Cir. May 3, 2004) (unpublished).  By that

time, plaintiff was no longer housed at the Montmorency County jail but rather was in

state custody serving his sentence.  However, following dismissal and the Sixth Circuit's

decision, plaintiff undertook the following actions to attempt to exhaust, as noted in the

MJRR of August 12, 2005.

On June 28, 2003, days after the Sixth Circuit's decision, plaintiff sent letters to

defendant requesting a grievance form and stating he wanted to grieve the conditions of

his confinement.  Plaintiff did not receive a response.

On July 28, 2003, plaintiff wrote a second letter again requesting a grievance

form.  Plaintiff did not receive a response.

5

On August 13, 2003, plaintiff wrote a third letter.  Plaintiff did not receive a response.

On September 29, 2003, plaintiff wrote a fourth letter to defendants as well as a letter to defendants' attorneys complaining that he had not received a response to his several requests for a grievance form.  Plaintiff did not receive a response.

On June 21, 2004, plaintiff wrote to Karr, stating:

> I have made repeated attempted by mail to obtain a grievance form from the Montmorency County Jail staff.  As my attempts have been unsuccessful, I am submitting my grievance in simple written form.

Plaintiff did not receive a response.

On August 14, 2004, plaintiff filed a second complaint against defendants.  The complaint alleged exhaustion and described plaintiff's attempts at exhaustion.  On September 23, 2004, defendants filed an answer and affirmative defenses, raising exhaustion.  Defendants then filed a motion to dismiss or for summary judgment.  One of the grounds raised in the motion was plaintiff's failure to exhaust.  Specifically, defendants argued:

> ...Plaintiff attaches to his complaint a letter he wrote to Sheriff Karr outlining his grievances with acknowledgment of the receipt dated June 25, 2004. Plaintiff claims he did not receive a response to the grievance.  Two months later, on August 24, 2004, plaintiff filed this action.
> ...plaintiff in this case did nothing more than avail himself of the initial stage of the grievance process.  He did not pursue his claims through the final step of the grievance procedure.  Therefore, plaintiff has failed to exhaust all of his administrative remedies.

Defendants' brief at p. 22.

The magistrate judge disagreed, stating:

> ... Plaintiff should be deemed to have exhausted his administrative remedies as to all defendants and all claims.  Between June 28 and September

6

29, 2003, he wrote four letters to each of the defendants/grievants, not only requesting grievance forms, but setting forth the precise nature of his claims.  No longer being housed in the County Jail, he had no access to the "official" grievance forms, and it is clear that despite his repeated request, the County had no intention of supplying him with one. ...Plaintiff's four letters may properly be considered his first-step grievances.  At that point, under County Policy, the burden shifted to the Jail to take some action.  If the grievance was rejected, the grievant, not the Plaintiff, had the responsibility to send it to the next level of review...

      Despite numerous requests to the Defendants and even their attorneys, they did nothing.  They essentially made their own grievance procedure a nullity. ... this is a case there the Defendants, through their non-feasance, have "exploited the exhaustion requirement" and rendered any further administrative remedies unavailable to the Plaintiff.

      ...Plaintiff has done everything within his power to comply with § 1997e(a), and this Court may therefore proceed to the merits of his claims.

MJRR at p. 10-11.

Significantly, defendants did not object to the magistrate judge's finding regarding

exhaustion.  As noted in the August 24, 2006 Memorandum and Order:

The magistrate judge also recommended a finding that plaintiff had exhausted his administrative remedies.  Defendants do not object to this finding.  Thus, the Court adopts the MJRR's findings and conclusions with respect to the exhaustion issue.

Memorandum and Order at p. 2 n.1.

2.

Defendants arguably have waived the right to raise the exhaustion issue by

having failed to object to the MJRR.  Defendants attempt to circumvent this by relying

on the Supreme Court's recent decision in Woodford.  In Woodford, the Supreme Court

held that to properly exhaust administrative remedies, a prisoner must "complete the

administrative review process in accordance with the applicable procedural rules."

Woodford, 126 S.Ct. 2378 (slip op. at 5).  Because the prisoner/plaintiff did not comply

with a 15 days time limit imposed by the prison grievance policy, his claim was not

7

exhausted.  <u>Woodford</u> makes clear that the focus for exhaustion is on the grievance

policy specific to the prison system at issue.

The Montmorency County Sheriff Department Jail Policy (attached as Exhibit A)

states in pertinent part:

INMATE GRIEVANCE

I.      PURPOSE

The Sheriff Department, will, through a grievance procedure, hear problems or
complaints of concern to the inmate.  This will be done to maintain the good
order of the facility and the welfare of the inmate.

II.     POLICY

An inmate will be allowed to grievant on any subject concerning his/her
confinement without fear of reprisal.  No staff member will be allowed to penalize
or intimidate any inmate for filing a grievance.

III.    PROCEDURE

    A.      A corrections officer will:

        1.      Receive the grievance.
        2.      Resolve to the satisfaction of the inmate.
        3.      Make written note in daily log to inform other shifts of action
           taken.
        4.      If unable to resolve, forward to supervisor forthwith.

    B.      The Undersheriff will:
        1.      Confer with the inmate(s).
        2.      If resolve, report in writing to the Sheriff with a copy to the
           inmate.
        3.      Review the grievance and reply to the inmate within 24
           hours excluding weekends and holidays.

    C.      The Undersheriff will:
        1.      Review the grievance within 48 hours excluding weekends
           and holidays
        2.      The Sheriff/Undersheriff's decision would be presented in
           writing within three days of the hearing, excluding weekends
           and holidays.  Copy to the inmate, Sheriff and the inmate

8

record.

Defendants says that the term "inmate" means an inmate at the Montmorency County Jail and that a grievance must be submitted during the course of incarceration at the jail.  Defendants then argue that because plaintiff never submitted a grievance while incarcerated at the county jail, he did not properly exhaust.  This argument cuts too fine. The policy simply states that the person making the grievance be an "inmate."   There is nothing in the policy to suggest this or that plaintiff had to submit a grievance during his incarceration.[4]  Given the circumstances of plaintiff's incarceration, it would have been very unlikely that plaintiff would have been able to submit a grievance during his incarceration.  To the extent he was able to grieve, he did so.  As evidenced by the deposition testimony of defendant Ball, plaintiff complained orally about the conditions of his incarceration on a daily basis.

Defendants also argue that plaintiff never submitted a written grievance as required.  This argument also fails.  The grievance procedure does not state that the grievance must be in writing, but rather states that a "corrections officer will receive the grievance."  Defendants' support for its argument that a written grievance is required is from the MJRR which states that "the inmate has the burden at the first step to submit a written grievance..."  MJRR at p. 7.  The Court does not consider this statement to be

---

[4]Indeed, the PLRA makes no specific requirement that an inmate must exhaust their administrative remedies during their incarceration or be forever foreclosed from relief when they are transferred to another facility.  Section 1997e(a) simply states:
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted

42 U.S.C. § 1997(e)(a).

binding, particularly in light of the fact that elsewhere in the policy there are express references to a writing.  See Parts III.A.3; III.B.2, and III.C.2.

Put simply, this case is not like Ngo.  Plaintiff did not fail to comply with any requirements of the policy such that he should be deemed to have not exhausted his administrative remedies.  As set forth above and as further detailed in the MJRR, plaintiff made many failed attempts, in writing, following dismissal of his initial complaint for failure to exhaust to obtain grievance forms.  Defendants cannot hide behind the exhaustion requirement.  The holding in Ngo does not change the magistrate judge's finding that defendants' actions in essentially ignoring plaintiff's requests effectively made the grievance procedure a "nullity" such that plaintiff should be deemed to have exhausted his administrative remedies.[5]  Accordingly, defendants are not entitled to summary judgment on this ground.

## C.  De Minimus Injury

Plaintiffs claim for emotional and mental damages, under the Eighth Amendment, is governed by 42 U.S.C. § 1997e(e) which states in part "[n]o federal action may be brought by a prisoner confined in a jail, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing a physical injury."  It is clear that the physical injury must be more than de minimus.

Here, plaintiff alleges he was held in belly chains and leg irons twenty-four hours

---

[5]It must be noted that at the time of the dismissal of plaintiff's initial complaint, the Sixth Circuit had very rigid requirements on exhaustion which resulted in the dismissal of the complaint for failure to exhaust.  These requirements have since been voided by a unanimous Supreme Court.  Jones v. Bock, __ U.S. __, 2007 S.Ct. 135890 (Jan. 22, 2007).

a day for 276 days.  Plaintiff alleges he suffered severe pain due to lack of mobility caused by the restraints.  He developed rashes and scarring on his arms, was deprived of exercise.  When he was transferred to Jackson prison, he complained that he was unable to raise his hands over his head.  He also says that he was in a "slumped over" position most of the time which caused him pain.  The fact that he never requested to see a doctor does not render his injuries de minimus as a matter of law.  Based on the litany of case law cited in plaintiff's response, the use of restraints under the circumstances here can pose a threat of physical injury and physical pain that is not de minimus.  Defendants are not entitled to summary judgment on this ground.

IV.  Plaintiff's Motion for Entry on Land by Expert

A.  Parties' Arguments

Plaintiff seeks an order allowing their expert, Barry Mintzes, to inspect the Montmorency County Jail in order to prepare a report.  Plaintiff says that defendants' expert inspected the jail and will likely do so again.  Plaintiff admits that it did not retain Mr. Mintzes until after the close of discovery on December 11, 2006.  However, plaintiff says it was not until mid-November that it learned of defendants' intended use of an expert, Dr. Darrell Ross, Ph.D. and was not able to retain Mr. Mintzes until later. Plaintiff requested permission for Mr. Mintzes to inspect the jail but defendants refused.

Defendants argue that plaintiff's motion is nothing more than an attempt to retain an expert after the close of discovery.  Defendants were not notified of Mr. Mintzes' retention as a expert until January 8, 2007.  Defendants complied with the discovery time limits imposed by the Court, including the disclosure of Dr. Ross and the submission of his report.  Defendants argue that plaintiff's violation of Rule 26(a) should

11

result in him being precluded from testifying under Rule 37.

## B.  Analysis

Defendants' objections are not well taken.  Admittedly, plaintiff disclosed Mr. Mintzes after the close of discovery.  However, given the nature of this case and the fact that plaintiff is represented by appointed counsel, plaintiff's motion will be granted. Although defendants say they may not receive Mr. Mintzes expert report until 30 days before trial, there is no danger of real prejudice.  Defendant will have ample time to deal with the report and can always come to the Court with any concerns.  Trial is not scheduled until April 9, 2007.

SO ORDERED.


 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 16, 2007


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 16, 2007, by electronic and/or ordinary mail.


 s/Julie Owens
Case Manager, (313) 234-5160